| | |
|---|---|
| PHILLIP R. SCOTT, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>J. BENNETT, et al., )<br>)<br>Defendants. )<br>_____ ) | **MEMORANDUM OF<br>DECISION AND ORDER** |

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment [Doc. 38].

## I.  PROCEDURAL BACKGROUND

The Plaintiff Phillip R. Scott ("Plaintiff"), proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 for the violation of his civil rights while incarcerated at Lanesboro Correctional Institution ("Lanesboro").[1] [Doc. 1]. Plaintiff names J. Bennett, identified as an employee at Lanesboro, and B. Bennett, identified as a correctional officer at Lanesboro, as Defendants in this matter.[2] [Id. at 3]. Plaintiff alleges that Defendants violated his

---

[1] The Plaintiff has been transferred to Nash Correctional Institution.

[2] J. Bennett's full name is Jerline Bennett. She was the Assistant Superintendent at Lanesboro at the relevant times. [Doc. 40-1 at ¶ 2: Jerline Bennett Dec.]. B. Bennett's full name is name is Brenita Bennett. Plaintiff correctly identified her as a correctional

Fourteenth Amendment due process rights by fabricating charges against him for assault and failing to give him a proper disciplinary hearing, his First Amendment rights by retaliating against him for filing a grievance, and his Eighth Amendment rights based on cruel and unusual punishment for his segregation status. [Id.]. Specifically, Plaintiff alleges as follows. On March 21, 2018, Brenita Bennett falsely accused Plaintiff of attempting to assault her. [Id. at 3]. Brenita Bennett then submitted false evidence, presumably at Plaintiff's disciplinary hearing, that led to Plaintiff's segregation in the Lanesboro Special Housing Unit (SHU) from March 21, 2018 to July 18, 2018. [Id.]. While Plaintiff was in disciplinary segregation, he filed a grievance against Brenita Bennett for verbal harassment. [Id. at 4]. On June 12, 2018, Plaintiff had a Facility Classification Committee (FCC) hearing where he was authorized to be released to the regular population. Plaintiff, however, was not released in retaliation for the grievance he filed against Brenita Bennett. [Id.]. Jerline Bennett, alleged to be Brenita Bennett's sister, was responsible for this continued segregation without due process. [Id.]. Jerline Bennett abused her authority under color of state law by denying Plaintiff's authorized release from segregation "to get back at [Plaintiff] for the encounters he had with her sister." [Id.]. Plaintiff was released from

---

officer at Lanesboro at the relevant times. [See Doc. 40-2 at ¶ 3: Brenita Bennett Dec.].

segregation on July 18, 2018. After Plaintiff was released and transferred to Pasquotank Correctional Institution, he received a document dated July 10, 2018 reflecting an extension to administrative segregation. This document was intended to "cover up" Plaintiff's continued segregation in the SHU "after the completion of his disciplinary stint." [Id.]. Before that, Plaintiff received no notice or hearing relative to his continued segregation pending transfer or a written or verbal summary of the reasoning therefore. [Id. at 5]. Plaintiff contends he "will show through documented proofs that his release from RHCP was authorized on 6-12-18." [Id. at 5].

Plaintiff asserts that his Fourteenth Amendment due process rights were violated by the introduction of false evidence by Brenita Bennett; by his confinement in segregation from March 21, 2018 until July 18, 2018 based on this false allegation; and by Jerline Bennett's actions in continuing to hold Plaintiff in segregation without a hearing after his June 12, 2018 release. Plaintiff contends his Eighth Amendment rights were violated by this same continued segregation. Finally, Plaintiff asserts that his First Amendment rights were violated by Jerline Bennett's retaliation against Plaintiff for filing a grievance against Brenita Bennett for verbal harassment. [Id. at 3-5].

For relief, Plaintiff seeks "that his infraction points be adjusted accordingly," as well as nominal, compensatory, and punitive damages. [Id.

3

at 4].

The Complaint survived this Court's initial review under 28 U.S.C. §§ 1915(e)(2) and 1915A. [Doc. 9]. After Defendants answered Plaintiff's Complaint, the Court entered a scheduling order in which the North Carolina Prisoner Legal Services, Inc., (NCPLS) was appointed for the limited purpose of assisting Plaintiff with discovery in this matter. [Doc. 19]. Pursuant to the scheduling order, the discovery completion deadline was January 1, 2020. [Id.]. On September 16, 2019, Taittiona Miles, a NCPLS attorney, filed a notice of appearance on behalf of Plaintiff for the limited purpose of assisting Plaintiff with discovery. [Doc. 20]. Thereafter, the Court entered a Consent Protective Order governing the production of certain discovery materials in this case. [Doc. 23]. On April 29, 2020, after resolution of various discovery issues by the Court, Attorney Miles moved to withdraw as Plaintiff's counsel. [Doc. 35]. Attorney Miles noted that she had received Defendants' discovery responses, reviewed them, and provided a copy of discovery to Plaintiff consistent with the Protective Order entered in this case. [Id.]. Attorney Miles also noted that she had "provided Plaintiff with advice regarding discovery and the next steps." [Id.]. The Court granted Attorney Miles' motion to withdraw as counsel. [Doc. 36].

4

On August 31, 2020, Defendants moved for summary judgment of Plaintiff's Complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure. [Doc. 38]. In support of their summary judgment motion, Defendants submitted their own Declarations, North Carolina Department of Public Safety (NCDPS) policies on Housing for Administrative Purposes and Restrictive Housing for Control Purposes, the Investigation Report regarding the attempted assault, and Plaintiff's Offender Public Information. [Docs. 40-2 through 40-6].

On September 2, 2020, this Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 41]. The Plaintiff was specifically advised that he "may not rely upon mere allegations or denials of allegations in his pleadings to defeat a summary judgment motion." [Id. at 2]. Rather, he must support his assertion that a fact is genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulation (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." [Id. (citing Fed. R. Civ. P. 56(c)(1)(a))]. The Court further advised that:

5

> An affidavit is a written statement under oath; that is, a statement prepared in writing and sworn before a notary public. An unsworn statement, made and signed under the penalty of perjury, may also be submitted. Affidavits or statements must be presented by Plaintiff to this Court no later than fourteen (14) days from the date of this Order and must be filed in duplicate.

[Id. at 3-4 (citing Fed. R. Civ. P. 56(c)(4))].

Plaintiff submitted nine handwritten pages in response, together with documents from the Investigation Report, two pages from unidentified discovery responses, and a few documents related to proceedings brought by Plaintiff against the NCDPS in the North Carolina Industrial Commission. [Docs. 42, 42-1]. Plaintiff's response, however, is not signed under oath or penalty of perjury. Moreover, it consists, in large part, of vague and conclusory allegations regarding the withholding and destruction of evidence by "the state;" actions by Chief Disciplinary Hearing Officer (DHO) Monica Bond, who is not a defendant in this matter; and misuse of power by "authority figures that had control and power over [Plaintiff]." [Doc. 42]. Plaintiff's response is devoid of evidence or information against Defendants having any tendency to support Plaintiff's claims at issue here and does not even mention Jerline Bennett.[3] [See id.]. As such, even if Plaintiff's

---

[3] Plaintiff also makes various contentions regarding video footage of the alleged attempted assault. He asserts, without basis, that he can only invoke "his right to compel discovery"

response had been made under oath, it would not contribute to the relevant forecast of evidence here. Thus, in terms of evidentiary forecast, the Defendant's is unrefuted.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F<small>ED</small>. R. C<small>IV</small>. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

---

when this matter is set for trial and, only then, can he find out where the video footage is, what is on the footage, and who has viewed the footage. [Doc. 42 at 2]. Plaintiff, however, has never moved the Court to compel production of the video footage. Nor does the record reflect that the video footage has otherwise been a subject of dispute between the parties, either while Plaintiff was represented by counsel or otherwise.

7

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III. FACTUAL BACKGROUND

The uncontroverted forecast of evidence in the light most favorable to Plaintiff is as follows.

On March 21, 2018, Brenita Bennett was searching inmates as they were leaving the chow hall. At that time, Brenita Bennett noticed that Plaintiff was leaving the chow hall with what appeared to be an orange in his pocket. [Doc. 40-2 at ¶ 4]. Offenders are not allowed to remove food from the chow hall. [Id.]. Brenita Bennett attempted to stop Plaintiff by directly ordering him to return to her. [Id. at ¶ 5]. Rather than returning to Brenita Bennett as ordered, Plaintiff removed the orange from his pocket and threw it at Ms. Bennett. [Id. at ¶ 6]. Although she was not hit, Brenita Bennett believed (and still believes) that Plaintiff intended to hit her with the orange. [Id.]. As a result of this conduct, Plaintiff was placed in restraints and escorted to Restrictive Housing for Administrative Purposes (RHAP). It is NCDPS policy for an offender to remain in RHAP pending investigation of an alleged infraction. [Id. at ¶ 7]. Prior to March 21, 2018, Brenita Bennett had not had any acrimonious interactions with Plaintiff or any altercations with him. [Id. at ¶ 8]. Brenita Bennett gave a statement for the disciplinary investigation of the attempted assault by Plaintiff. As a result of the investigation, the investigating officer, Charles Finney, recommended that Plaintiff be charged

9

Case 3:18-cv-00583-MR Document 44 Filed 03/15/21 Page 9 of 16

with attempting to assault staff and referred the matter to DHO Robert Baker. [Id. at ¶¶ 9-10]. Baker upheld the finding of attempting to assault staff. [Id. at ¶ 11]. Plaintiff appealed. [Id.]. On appeal, Chief DHO, Monica Bond, upheld the guilty verdict.[4] [Id. at ¶ 12]. Pursuant to NCDPS policy, Plaintiff was assigned to 90 days in Restrictive Housing for Control Purposes ("RHCP") due to this verdict. [Id. at ¶ 13]. Plaintiff was released from RHCP 89 days later, on July 3, 2018. [Id.].

Because of Plaintiff's attempted assault on Brenita Bennett, it was determined that he should be transferred to another facility. [Doc. 40-2 at ¶ 14]. While Plaintiff's transfer was pending, he was assigned to RHAP. [Id. at ¶ 14]. Plaintiff remained in RHAP for 15 days, until July 18, 2018, when he was transferred to Pasquotank Correctional Institution. [Id. at ¶ 14]. Plaintiff's 15-day assignment to RHAP pending transfer was pursuant to the NCDPS policy. [Id. at ¶ 15]. Brenita Bennett had no involvement in or impact on any decision regarding the length of Plaintiff's assignments to RHAP or RHCP after the attempted assault or on the decision to transfer Plaintiff. [Id. at ¶ 17; see id. at ¶ 14].

---

[4] In his response to Defendants' summary judgment motion, Plaintiff contends he was wrongfully convicted of assault, not attempted assault, on staff due to "the untruthfulness of the state/D.O.C. from the very beginning." [Doc. 42 at 2-3]. Plaintiff argues that Brenita Bennett never claimed that the orange hit her, only that Plaintiff threw the orange at her. [Id.]. Plaintiff, however, was never charged with or convicted of assault, only attempted assault. [See Doc. 40-4 at 1-4, 12].

Jerline Bennett, the Assistant Superintendent at the relevant times, never had any interactions with Plaintiff. [Doc. 40-1 at ¶¶ 3-4]. Jerline Bennett had no knowledge of the attempted assault until this action was filed. [Id. at ¶ 5]. Jerline Bennett had no personal involvement with the investigation of the attempted assault, with Plaintiff's disciplinary hearing, or with the outcome of the hearing. [Id. at ¶ 6]. Jerline Bennett never made any recommendations regarding Plaintiff's discipline or housing assignment. [Id. at ¶ 10]. Before this lawsuit was filed, Jerline Bennett did not communicate with Brenita Bennett regarding the attempted assault or the disciplinary investigation. [Id. at ¶ 8]. Finally, Defendants are not related to each other in any way. They merely share the same last name. [Id. at ¶ 11; Doc. 40-2 at ¶ 18].

## IV. DISCUSSION

Plaintiff purports to make claims against Defendants for violation of his First, Eighth, and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983. The forecast of evidence before the Court is wholly insufficient to support any of these claims.

### A. First Amendment

An inmate has a clearly established First Amendment right to be free from retaliation for filing grievances. See Booker v. S.C. Dep't of Corrs., 855

11

F.3d 533, 540 (4th Cir. 2017). Here, however, there is no forecast of evidence that Plaintiff was retaliated against for filing the grievance against Brenita Bennett. In fact, there is no forecast of evidence of this grievance before the Court at all, let alone any retaliatory response thereto. As such, there is no genuine issue for trial on this claim and it will be dismissed.

### B. Eighth Amendment

Plaintiff claims his Eighth Amendment rights were violated when he continued to be held in segregation without a hearing.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986), and from inhumane methods of punishment and from inhumane conditions of confinement. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Extreme deprivations are required, and "only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Hudson v. McMillian, 503 U.S. 1, 9 (1992) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991) (internal quotation omitted)). Segregated housing does not itself violate the Eighth Amendment. See Porter v. Clarke, 923 F.3d 348, 362-63 (4th Cir. 2019).

Here, there is no forecast of evidence of any Eighth Amendment violation. Rather, the forecast of evidence shows that Plaintiff was placed in RHCP for 89 days due to the finding of his guilt for attempting to assault Bretina Bennett pursuant to NCDPS policy. Then, for a period of 15 days, Plaintiff was placed in RHAP pending transfer, also pursuant to NCPDS policy. There is no forecast of evidence of an extreme deprivation denying Plaintiff "the minimal civilized measure of life's necessities" to support an Eighth Amendment claim. Hudson, 503 U.S. at 9. Furthermore, even if the Eighth Amendment supported a claim based solely on segregation status, the forecast of evidence does not reflect that either Defendant had any involvement in decisions regarding Plaintiff's housing status. Again, there is no genuine issue for trial on this claim. As such, the Court will dismiss it.

## C. Fourteenth Amendment

Plaintiff claims that his Fourteenth Amendment due process rights were violated by the introduction of false evidence by Brenita Bennett; by his confinement in segregation from March 21, 2018 until July 18, 2018 based on this false allegation; and by Jerline Bennett's actions in continuing to hold Plaintiff in segregation without a hearing after his June 12, 2018 release.

To prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by

13

governmental action. Bevrati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). Although prisoners are afforded some due process rights while incarcerated, those liberty interests are limited to "the freedom from restraint which, while not exceeding the sentence in such and unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

Changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991); Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994). To support a claim for violation of a constitutional right under the due process clause, a plaintiff must show that his confinement posed an atypical and significant hardship in relationship to the ordinary incidents of prison life. See Wilkinson v. Austin, 545 U.S. 209 (2005).

There is no forecast of evidence to support of any grounds for Plaintiff's due process claims. The undisputed forecast of evidence shows that Plaintiff threw an orange at Brenita Bennett, that she gave a statement regarding the

14

Case 3:18-cv-00583-MR   Document 44   Filed 03/15/21   Page 14 of 16

incident for the purpose of a disciplinary investigation, and that a DHO found Plaintiff guilty of attempted assault on staff. The guilty finding was upheld on appeal. Further, the undisputed forecast of evidence shows that Plaintiff was placed in RHCP and RHAP because of this guilty finding and for administrative purposes, respectively. Both restrictive housing assignments were pursuant to NCDPS policy. Furthermore, the undisputed forecast of evidence reflects that Jerline Bennett did not know about the attempted assault until this action was filed and that she was not involved in the disciplinary hearing or decision or in Plaintiff's housing assignment.

As such, there is no genuine issue for trial on Plaintiff's Fourteenth Amendment claim.

Because there remain no genuine issues of material fact for trial on any of Plaintiff's claims, the Court will grant Defendants' motion for summary judgment.

## V. CONCLUSION

For all the foregoing reasons, Defendants' motion for summary judgment is granted.

**O R D E R**

**IT IS, THEREFORE, ORDERED** that Defendants' Motion for Summary Judgment [Doc. 38] is **GRANTED** and this action is **DISMISSED with prejudice**.

The Clerk is respectfully instructed to terminate this action.

**IT IS SO ORDERED.**

Signed: March 13, 2021

Martin Reidinger
Chief United States District Judge